IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

SHAWN ALLEN,

      Plaintiff,

v.

THE GEO GROUP, INC
d/b/a CHEYENNE MOUNTAIN REENTRY CENTER,
COMMUNITY EDUCATION CENTERS, INC.,
ANTHONY VECCHIARELLI, M.D., in his Individual and Official Capacity,
APRIL CALDWELL, P.A., in her Individual and Official Capacity,
SARAH-LYNN NERO, R.N., in her Individual and Official Capacity,
SERENE BEALL, L.P.N., in her Individual and Official Capacity,
MARY RIVERA, R.N., in her Individual and Official Capacity,
JOSHUA NASH, R.N., in his Individual and Official Capacity,
SHERRI ZIEGLER, R.N., in her Individual and Official Capacity,

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, by and through his attorney, Todd Bovo of Bovo Law Group, LLC, file this Complaint and state the following:

## I.      INTRODUCTION

On January 21, 2018, two inmates at the Cheyenne Mountain Reentry Center attempted to escape through the ventilation system. As they were crawling through the air ducts the ceiling collapsed onto Shawn Allen, the Plaintiff, causing serious injury including a head injury and fractured orbit.

1

This is a § 1983 and a Colorado Negligence and Medical Negligence case brought by the Plaintiff against the Defendants. This action arises from the Defendants' unlawful deprivation of Mr. Allen's civil rights and their negligent actions during his confinement at the Cheyenne Mountain Reentry Center.

Cheyenne Mountain Reentry Center staff waited to take Mr. Allen to medical the next day. The medical staff was too busy and deferred seeing Mr. Allen until later that day. Medical staff initially refused any pain medications and any imaging to diagnosis injuries. Mr. Allen's serious medical injuries went undiagnosed; finally, an x-ray was taken approximately twenty days after the incident.

Mr. Allen suffered excruciating pain and was finally seen by an outside medical specialist approximately (45) forty-five days later who diagnosed him with traumatic iritis and ordered a CT scan of the brain. Another month passed without receiving the care he needed and finally, the CT scan was taken which revealed an undisputed orbital eye fracture from the incident.

Mr. Allen not only received injuries sustained when the escaping inmate fell on top of him, but also received further injury due to the delay in medical care Mr. Allen received, resulting in a permanent traumatic brain injury.

## II.        JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States, including Article III, Section 1 of the United States Constitution and is brought pursuant to 42 U.S.C. § 1983, and 42 U.S.C. § 1988.

2.   Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331, 1343, 1367 and

2201.  Jurisdiction supporting Plaintiff's claims for attorneys' fees and costs is conferred

by 42 U.S.C. § 1988.

3.   This case is instituted in the United States District Court for the District of Colorado

pursuant to 28 U.S.C. § 1391 as the judicial district in which all relevant events and

omissions occurred and in which Defendants maintain offices and/or reside.

4.   Supplemental pendent jurisdiction is based on 28 U.S.C. § 1367 because the violations of

federal law alleged are substantial and the pendent causes of action derive from a

common nucleus of operative facts.

5.   Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b).  All of the

events alleged herein occurred within the State of Colorado, and all of the parties were

residents of the State at the time of the events giving rise to this litigation.

6.   The state law claims in this matter are brought against private corporations and therefore

no notice of claims was required under the Colorado Governmental Immunity Act

("CGIA").

### III.        CERTIFICATE OF REVIEW

7.   Pursuant to C.R.S. § 13-20-602(3)(a), counsel certifies as follows:

   a.   Counsel has consulted with medical professionals with expertise in the areas of

      the alleged negligent conduct as set forth in Plaintiff's Complaint and Jury

      Demand;

b.  The medical professionals who have been consulted have reviewed all known facts relevant to the allegations of negligent conduct as complained of in Plaintiff's Complaint and Jury Demand;

c.  Based upon review of such facts, the medical professionals have concluded that the filing of the claims against Defendants does not lack substantial justification within the meaning of C.R.S. § 13-17-102(4); and

d.  The medical professionals who have reviewed all known facts relevant to the allegations of negligent conduct as contained in Plaintiff's Complaint and Jury Demand meet the requirements set forth in C.R.S. § 13-64-101.

## IV.      PARTIES

8.  At all times relevant to this action, Plaintiff Shawn Allen, was a citizen of the United States of America and a resident of the State of Colorado, confined to the Cheyenne Mountain Reentry Center in Colorado Springs, Colorado.

9.  At all times relevant to the subject matter of this litigation, Defendant The GEO Group, Inc. ("GEO") was a Florida foreign corporation, registered in good standing in the State of Colorado. The GEO Group, Inc. acquired Defendant Community Education Centers, Inc. prior the January 21, 2018, incident in this action. The GEO Group, Inc. operated under  the trade name it acquired from Community Education Centers, Inc., of Cheyenne Mountain Reentry Center. The GEO Group, Inc. was acting within the course and scope of a contract with The Colorado Department of Corrections to provide inmate services

and healthcare services, including medical and mental health, at the Cheyenne Mountain Reentry Center.

10.   At all times relevant to the subject matter of this litigation, Defendant Community Education Centers, Inc. ("CEC") was a Delaware foreign corporation, registered in good standing in the State of Colorado. Community Education Centers, Inc. maintained a trade name of Cheyenne Mountain Reentry Centers ("CMRC") in good standing in the State of Colorado. Community Education Centers, Inc. was acting within the course and scope of a contract with The Colorado Department of Corrections to provide inmate services and healthcare services, including medical and mental health, at the Cheyenne Mountain Reentry Center.

11.   At all times relevant to this action, Defendant Anthony Vecchiarelli, M.D., was a citizen of the United States and a resident of Colorado.  Upon information and belief, Dr. Vecchiarelli was acting under color of state law in his capacity as a doctor employed by Cheyenne Mountain Reentry Center.

12.   At all times relevant to this action, Defendant April Caldwell, P.A.., was a citizen of the United States and a resident of Colorado.  Upon information and belief, Dr. Caldwell was acting under color of state law in her capacity as a physician assistant employed by Cheyenne Mountain Reentry Center.

13.   At all times relevant to this action, Defendant Sarah-Lynn Nero, R.N., was a citizen of the United States and a resident of Colorado.  Upon information and belief, Nurse Nero was acting under color of state law in her capacity as a nurse employed by Cheyenne Mountain Reentry Center.

14. At all times relevant to this action, Defendant Serene Beall, L.P.N., was a citizen of the United States and a resident of Colorado.  Upon information and belief, Nurse Beall was acting under color of state law in her capacity as a nurse employed by Cheyenne Mountain Reentry Center.

15. At all times relevant to this action, Defendant Mary Rivera, R.N., was a citizen of the United States and a resident of Colorado.  Upon information and belief, Nurse Rivera was acting under color of state law in her capacity as a nurse employed by Cheyenne Mountain Reentry Center.

16. At all times relevant to this action, Defendant Joshua Nash, R.N., was a citizen of the United States and a resident of Colorado.  Upon information and belief, Nurse Nash was acting under color of state law in her capacity as a nurse employed by Cheyenne Mountain Reentry Center.

17. At all times relevant to this action, Defendant Serri Ziegler, R.N., was a citizen of the United States and a resident of Colorado.  Upon information and belief, Nurse Ziegler was acting under color of state law in her capacity as a nurse employed by Cheyenne Mountain Reentry Center.

## V. FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

18. The allegations in this section are all made upon information and belief. Plaintiff incorporates herein by this reference the allegations contained in Paragraphs 1 through 17 of this Complaint as if set forth verbatim.

19. Plaintiff was a resident and inmate of Cheyenne Mountain Reentry Center on January 21, 2018.

20. Defendants GEO and CEC were aware of inmates gaining access to the ceiling and ductwork in the CMRC facility prior to January 21, 2018.

21. One such incident of inmates gaining access to the ceiling occurred on January 4, 2018, in room 11.

22.  On January 21, 2018, at or around 2:45 p.m. inmates entered the ductwork above Unit 2A in the CMRC facility.

23. At the above described time and place, Plaintiff entered room 14 of Unit 2A.

24. At the above described time and place, inmate Chad Morris fell through the ceiling hitting Plaintiff.

25. Plaintiff was hit by the inmate, ceiling debris, ceiling fan, and table.

26. Plaintiff incurred severe injuries to the head, face, and leg.

27. Defendants GEO and CEC secured access to the ceiling after the incident.

28. Defendants GEO and CEC did not send Plaintiff to the medical staff after the incident—instead required Plaintiff to file a medical request.

29. Plaintiff filed a medical request on January 21, 2018.

30. Plaintiff was taken for a medical check on January 22, 2018, the day after the incident.

31. Defendants GEO and CEC's medical staff, Defendant Beall, were too busy to see Plaintiff when the officer arrived.

32. Plaintiff complained of severe headache pain, blurred vision, memory loss, thigh bruising, and pain/injury around eye, forehead, cheek, and chin.

33. Plaintiff was seen by Defendant Beall later in the afternoon on January 22, 2018; however, no physician was consulted.

34. On January 23, 2018, Plaintiff complained of head pain, vision loss, swelling around head with no physician consulted, and no pain medications prescribed, seeing only Defendant Nero.

35. An appointment with Defendant Caldwell was set for February 8, 2018.

36. Plaintiff requested a CT scan during his visit on January 23, 2018.

37. Even though Defendant Nero assessed Plaintiff, she documented that no physician was notified of Plaintiff's condition on January 23, 2018.

38. Plaintiff complained on January 24, 2018, of throbbing head pain, blurred vision, dizziness with sudden changes in movement, and new soreness on thigh.

39. Plaintiff advised on January 24, 2018, that he was on the waiting list for a physician.

40. Defendant Rivera did not contact a physician and continued to advise to seek medical for worsening condition when Plaintiff was already presenting with a worsening condition.

41. On January 24, 2018, Defendant Beall finally called a physician, Defendant Vecchiarelli, for pain medications, three days after the incident.

42. Defendant Beall, a registered nurse, diagnosed Plaintiff with a whiplash type injury.

43. On January 25, 2018, Plaintiff continued to experience blurred vision.

44. Defendant Caldwell was not present for a physical exam and verbally ordered a visual acute with no further orders on January 25, 2018.

45. Defendant Ziegler documented no concern for orbit, eye, or head trauma on January 25, 2018.

46.   Defendant Beall advised Plaintiff he was not allowed any further medical care.

47.   On January 31, 2018, Plaintiff was still experiencing severe pounding pulsing headache at 9 of 10 with blurry vision.

48.   Defendant Nero contacted Defendant Vecchiarelli who remotely ordered more pain meds for Plaintiff on January 31, 2018.

49.   Defendants provided no consistent treatment for a concussion or head injury.

50.   Plaintiff was not seen (in person) by a physician from January 21, 2018, to February 8, 2018.

51.   Finally, on February 9, 2018, Defendant Caldwell exaed Plaintiff in person and ordered for the first time X-rays of Plaintiff's head, approximately three weeks after the incident.

52.   On February 12, 2018, X-rays were finally taken of Plaintiff's facial bones.

53.   The X-rays showed no fracture, because as this type of imaging could not show the orbital fracture sustained by Plaintiff.

54.   On February 19, 2018, a month after incident, Defendants GEO and CEC's onsite optometrist, not being able to provide a diagnosis, referred Plaintiff to an outside ophthalmologist for a diagnoses related to the trauma Plaintiff experienced.

55.   On March 2, 2018, Plaintiff was diagnosed with traumatic iritis by Rocky Mountain Eye Center forced a medical visit with Defendants to discuss the recommendations from ophthalmology.

56.   Rocky Mountain Eye Center recommended Plaintiff obtain a CT scan of brain and orbit to rule out any orbital fracture with a follow up in two weeks to review findings of CT scan.

57. Defendants failed to schedule a CT scan for two weeks.

58. Plaintiff requested the status of CT scan on March 23, 2018.

59. Defendants essentially mocked Plaintiff by stating, "Recommendations by specialists are just that recommendations," and Defendants are not required to follow them.

60. After Plaintiff left Defendants' facility, a CT Scan was performed on April 9, 2018.

61. The CT scan showed that Plaintiff had a chronic right orbital floor fracture, which was caused by the incident and the lack of care.

62. Plaintiff consistently exhibited the same medical symptoms from January 21, 2018, until he left Defendants' facility.

63. Defendants failed to diagnose Plaintiff's right orbital floor fracture for the two and half months that he was under their medical care.

64. Defendants failed to treat Plaintiff's orbital floor fracture with immediate surgical intervention as he needed.

65. Plaintiff developed a traumatic brain injury from the failure to treat the orbital floor fracture.

66. Plaintiff developed cognitive deficits from the traumatic brain injury.

67. Plaintiff is unable to work due to cognitive deficits from the traumatic brain injury.

68. Defendants maintained unconstitutional policies, practices, and customs regarding medical care for inmates.

69. It was the policy, custom, or practice of Defendant not to provide sufficient staffing to medically service the inmates as a cost-cutting measure.

70. Defendants were financially incentivized not to provide sufficient staffing.

71. The understaffing contributed to the deliberately indifferent and negligent conduct by Defendants' employees.

72. It was Defendants' policy, custom, or practice to make inmates suffer by not providing adequate medical care such as diagnostic studies, which reveal serious medical conditions.

73. It was Defendants' policy, custom, or practice to deny medical care even when objective signs and symptoms warranted additional care.

74. Time is of the essence when a person has a head injury or a fracture in the head.  Urgency is even more imperative when a person exhibits signs and symptoms of a head injury. However, Defendants did not train medical staff to act with expediency and urgency when treating inmates with possible head injuries.

75. If treated appropriately, Plaintiff would not have sustained a permanent injury.

76. But for Defendants' failure to train, Plaintiff's injury could have been prevented.

77. Defendants' policies, customs, and practices were so far outside the standard of care for medical professionals as to be obviously reckless to a lay person to the know serious medical needs of inmates suffering from a head injury.

## VI.    STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Negligence against Defendants GEO and CEC)**

78. Plaintiff incorporates herein by this reference the allegations contained in Paragraphs 1 through 77 of this Complaint as if set forth verbatim, and brings the following claim

against Defendants The GEO Group, Inc. d/b/a Cheyenne Mountain Reentry Center and Community Education Centers, Inc.

79. Pursuant to CGIA, governmental immunity is waived for any action for injuries resulting from the operation of any correctional facility or jail. *See* C.R.S. § 24-10-106(1)(b).

80. The operation of a correctional facility includes the provision of medical care necessary for basic health for purposes of the CGIA. *See Nieto v. State,* 952 P. 2d 834, 839 (Colo. App. 1997).

81. Defendants GEO and CEC are therefore not entitled to Immunity under CGIA.

82. At all times relevant to the allegations in this Complaint, Defendants GEO and CEC had a duty of care to its residents to maintain its operations and execution of its policies and procedures in a reasonable manner so as to not create a risk of danger to others including its residents.

83. At all times relevant to the allegations in this Complaint, Defendants GEO and CEC had a duty to exercise due care to avoid enacting and following through with policies and procedures that could place its residents at risk.

84. At all times relevant to the allegations in this Complaint, Defendants GEO and CEC had a duty of custodial care to Plaintiff.

85. Plaintiff was under the medical responsibility, care, and treatment of Defendants GEO and CEC.

86. Defendants GEO and CEC had the duty to provide reasonable medical care and treatment to Plaintiff.

87.  Defendants GEO and CEC breached its duty of care by failing to reasonably maintain its operations in a safe and reasonable manner, and Defendants GEO and CEC were therefore negligent in the operation of its policies and procedures within its facility causing it to harm Plaintiff.

88.  As a direct and proximate result of Defendantss GEO and CEC breach of their duties, Plaintiff incurred past and future economic expenses, losses and damages, including, but not limited to past and future medical expenses, loss of earnings and impairment of earning capacity.

89.  As a direct and proximate result of Defendants GEO and CEC's breach of their duties, Plaintiff suffered in the past and will continue to suffer in the future, non-economic damages including but not limited to, pain and suffering, loss of enjoyment of life, inconvenience, emotional distress and impairment of quality of life.

90.  As a direct and proximate result of Defendants GEO and CEC's breach of their duties, Plaintiff has suffered permanent physical impairment and disfigurement.

## SECOND CLAIM FOR RELIEF

### (Negligent Training against Defendants GEO and CEC)

91.  Plaintiff incorporates herein by this reference the allegations contained in Paragraphs 1 through 90 of this Complaint as if set forth verbatim, and brings the following claim against Defendants The GEO Group, Inc. d/b/a Cheyenne Mountain Reentry Center and Community Education Centers, Inc.

92.   Defendants GEO and CEC had a duty to use reasonable care in its training of its staff and personnel.

93.   Defendants GEO and CEC breached their duty in the training and supervision of its staff and personnel in that Defendants GEO and CEC's staff and personnel failed to restrict inmates' access to the ceiling ductwork resulting in the ceiling and body falling on Plaintiff.

94.   As a direct and proximate result of Defendants GEO and CEC's breach of their duty of care, Plaintiff incurred past and future economic expenses, losses and damages, including, but not limited to past and future medical expenses, loss of earnings and impairment of earning capacity.

95.   As a direct and proximate result of Defendants GEO and CEC's breach of their duty of care, Plaintiff suffered in the past and will continue to suffer in the future, non-economic damages including but not limited to, pain and suffering, loss of enjoyment of life, inconvenience, emotional distress and impairment of quality of life.

96.   As a direct and proximate result of Defendant GEO and CEC's breach of their duty of care, Plaintiff has suffered permanent physical impairment and disfigurement.

**THIRD CLAIM FOR RELIEF**

**(Negligent Supervision against Defendants GEO and CEC)**

97.   Plaintiff incorporates herein by this reference the allegations contained in Paragraphs 1 through 96 of this Complaint as if set forth verbatim, and brings the following claim

against Defendants The GEO Group, Inc. d/b/a Cheyenne Mountain Reentry Center and Community Education Centers, Inc.

98.   Defendants GEO and CEC had a duty to use reasonable care in its supervision of its staff and personnel.

99.   Defendant GEO and CEC breached their duty in the supervision of its staff and personnel in that Defendants GEO and CEC's staff and personnel failed to restrict inmates' access to the ceiling ductwork resulting in the ceiling and body falling on Plaintiff.

100.   As a direct and proximate result of Defendants GEO and CEC's breach of their duty of care, Plaintiff incurred past and future economic expenses, losses and damages, including, but not limited to past and future medical expenses, loss of earnings and impairment of earning capacity.

101.   As a direct and proximate result of Defendants GEO and CEC's breach of their duty of care, Plaintiff suffered in the past and will continue to suffer in the future, non-economic damages including but not limited to, pain and suffering, loss of enjoyment of life, inconvenience, emotional distress and impairment of quality of life.

102.   As a direct and proximate result of Defendants GEO and CEC's breach of their duty of care, Patton has suffered permanent physical impairment and disfigurement.

## FOURTH CLAIM FOR RELIEF
### (Medical Negligence
### against Defendants Vecchiarelli, Caldwell, Nero, Beall, Rivera, Nash, and Ziegler)

103.   Plaintiff incorporates herein by this reference the allegations contained in Paragraphs 1 through 102 of this Complaint as if set forth verbatim, and brings the following claim

against Defendants Anthony Vecchiarelli, M.D., April Caldwell, P.A., Sarah-Lynn Nero, R.N., Serene Beall, R.N., Mary Rivera, R.N., Joshua Nash, R.N., and Sherri Ziegler, R.N.

104.   Defendant Vecchiarelli is a licensed medical doctor.

105.   Defendant Caldwell is a license physician assistant.

106.   Defendants Nero, Rivera, Nash, and Ziegler are licensed registered nurses.

107.   Defendant Beall is a licensed practical nurse.

108.   Defendants owed Plaintiff the basic right to have adequate health care and not deprive him of necessary care.

109.   Defendants were required to act to safeguard the life and health of their patient.

110.   Defendants Beall practices under the supervision of a physician or registered nurse.

111.   Defendants Nero, Rivera, Nash, and Ziegler practices under the supervision of a physician.

112.   Defendant Caldwell practices under the supervision of a physician.

113.   Defendant Vecchiarelli and Caldwell owed Plaintiff a duty to exercise that degree of care and skill exercised by and expected of physicians under the same or similar circumstances.

114.   The nurse defendants are allowed to make certain patient care decisions without the need for governance by a physician.

115.   The nurse defendants administer treatments and medications prescribed only by physicians.

116.   The nurse defendants did not consult with a physician about Plaintiff on numerous occasions.

117. The nurse defendants made independent patient care decisions in their treatment of Plaintiff.

118. Defendants' patient care decisions in their treatment of Plaintiff were willfully and/or negligently acted in a manner inconsistent with the health or safety of Plaintiff.

119. Willfully or negligently acting in a manner inconsistent with the health or safety of persons under a nurse's care is grounds for discipline pursuant to C.R.S. § 12-38-117.

120. Negligently or willfully practicing nursing in a manner which fails to meet generally accepted standards for such nursing practice is grounds for discipline pursuant to C.R.S. § 12-38-117.

121. The nurse defendants were negligent in treating Plaintiff in that they did not do what a reasonable, ordinary nurse would do treating the Plaintiff and thus their conduct fell below the standard of care required of them.

122. Defendant Vecchiarelli and Caldwell's treatment of Plaintiff fell below the applicable standard of care.

123. As a direct and proximate result of Defendants' negligence, Plaintiff suffered injury and damages including pain and suffering, loss of enjoyment and quality of life, economic damages and emotional distress.

## FIFTH CLAIM FOR RELIEF

**(42 U.S.C. § 1983 - Deliberate Indifference to Medical Needs against All Defendants)**

124. Plaintiff incorporates herein by this reference the allegations contained in Paragraphs 1 through 123 of this Complaint as if set forth verbatim, and brings the following claim against all Defendants , in both their individual and official capacities if applicable.

125. At all times relevant to the allegations in this Complaint, the Defendants were acting under color of state law.

126. All Defendants are persons within the meaning of 42 U.S.C. § 1983.

127. Plaintiff had a clearly established right under the 8th Amendment to be free from deliberate indifference to his known serious medical needs.

128. The acts of the Defendants deprived Plaintiff of his 8th Amendment rights.

129. Defendants GEO and CEC operate a private prison under a contract with the Colorado Department of Corrections.

130. All individual defendants are employees or contractors of Defendants GEO and/or CEC.

131. Defendant GEO and CEC are responsible for actions of its employees.

132. All Defendants were aware of the incident that happened on January 21, 2018.

133. All Defendants were aware of Plaintiff's serious medical injuries.

134. Defendants failed to exam, properly treat, and/or care for Plaintiff.

135. Defendants knew of medical risks associated to the injuries sustained by Plaintiff on January 21, 2018.

136. Defendants failed to respond to Plaintiff's request for medical care.

137. Defendants refused timely medical assistance that could have prevented permanent injury to Plaintiff.

138. Defendants have demonstrated a policy to place cost ahead of medical treatment.

139.  Defendants have demonstrated a policy, made by those with no medical knowledge; to determine which medical procedures recommended by physicians will be provided.

140.  Failure to provide timely medical care has resulted in a traumatic brain injury to Plaintiff.

141.  All of the deliberately indifferent acts of each defendant were conducted within the scope of their official duties and employment.

142.  The acts and omissions of each individual defendant were the legal and proximate cause of Plaintiff's injuries and permanent impairment.

143.  The acts and omissions of each individual defendant caused Plaintiff's damages in that he suffered extreme physical and mental pain while he was in Defendants' custody.

144.  The intentional actions or inactions of each individual defendant as described herein intentionally deprived Plaintiff of due process and of rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and caused him other damages.

145.  At all times relevant, Defendants had a legal duty to provide medical care to inmates within the standard of care for the community.  The Defendants violated that duty by knowingly and purposefully denying Plaintiff medical care and treatment by qualified medical providers for his serious medical needs.

146.  The nurse defendants failed to fulfill their gatekeeper roles by failing to contact a physician.

147.  Each Defendants conduct was a direct cause of Plaintiff's injuries and damages, which are indivisible, resulting in join and several liability.

148. The Defendants were aware of the medical need and were each deliberately indifferent to the medical need; that is, the Defendants knew of it and consciously disregarded it by failing to take reasonable measures to address it.

149. The failure of the Defendants to act caused Plaintiff damages in amounts to be determined at trial.

WHEREFORE, Plaintiff pray for judgment for the Plaintiff and against Defendants and ask this Court to award them all of the relief allowed by law, including, but not limited to, the following:

A. Appropriate relief at law and equity;

B. Declaratory relief and other appropriate equitable relief;

C. Economic losses on all claims allowed by law;

D. Compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined by trial;

E. Punitive damages on all claims allowed by law and in an amount to be determined at trial;

F. Attorneys' fees and the costs associated with this action, including expert witness fees, on all claims allowed by law;

G. Pre- and post-judgment interest at the highest lawful rate;

H. Any further relief that this Court deems just and proper, and any other relief as allowed by law;

I.  Money damages, including compensatory, economic, non-economic, special, and punitive damages against Defendants for all losses and damages suffered as a result of the negligence and civil rights violations complained of herein.

J.  Pre-judgement interest on all damages.

K.  Costs and disbursements of this action, including reasonable attorneys' fees.

L.  Post-judgement interest.

M.  Such other and further equitable or injunctive relief as this Court may deem just and proper under the circumstances.

**PLAINTIFF DEMANDS A JURY TRIAL.**

Respectfully submitted,

Bovo Law, LLC

_s/ Todd Frank Bovo_
Todd F. Bovo
Attorney for Plaintiffs
650 South Cherry Street, #1400
Denver, CO 80246
Phone: (303) 333 4686
Fax: (303) 595 5334
Email: todd@bovolaw.com

Plaintiffs' Address:

Shawn Allen
2570 Pemberly Avenue
Highlands Ranch, CO 80126