IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00179-MEH

SHAWN ALLEN,

      Plaintiff,

v.

GEO GROUP, INC. d/b/a Cheyenne Mountain Reentry Center,
COMMUNITY EDUCATION CENTERS, INC.,
ANTHONY VECCHIARELLI, M.D., in his individual and official capacities,
APRIL CALDWELL, P.A., in her individual and official capacities,
SARAH-LYNN NERO, in her individual and official capacities,
SERENE BEALL, L.P.N., in her individual and official capacities,
MARY RIVERA, R.N., in her individual and official capacities,
JOSHUA NASH, R.N., in his individual and official capacities, and
SHERRI ZIEGLER, R.N., in her individual and official capacities,

      Defendants.
_____

## AMENDED[1] ORDER
_____

**Michael E. Hegarty, United States Magistrate Judge**.

      Plaintiff Shawn Allen ("Plaintiff") asserts five claims in his operative Amended Complaint

("Complaint") against Defendants.  ECF 40.  Plaintiff brings Claims 1, 2, and 3 for negligence,

negligent training, and negligent supervision, respectively, against Defendants Geo Group, Inc.

d/b/a Cheyenne Mountain Reentry Center ("Geo Group") and Community Education Centers, Inc.

("CEC").  *Id.* at 12–18.  Plaintiff brings Claim 4 for medical negligence against Defendants

Anthony Vecchiarelli, M.D., April Caldwell, P.A., Sarah-Lynn Nero, Serene Beall, L.P.N., Mary

---

[1] The Court issues this Amended Order to revise Section I.B(2) under the "Analysis" heading, clarifying the dismissal of certain claims against the Individual Defendants in their official capacities.  The Court also modifies the "Conclusion" section to reflect this clarification.

Rivera, R.N., Joshua Nash, R.N., and Sherri Ziegler, R.N. (collectively, "Individual Defendants"). *Id.* at 18–21.   Finally, Plaintiff asserts Claim 5 pursuant to 42 U.S.C. § 1983 for deliberate indifference to medical needs against all Defendants.  *Id.* at 21–23.   Plaintiff invokes this Court's jurisdiction pursuant to 28 U.S.C. § 1331 for his Section 1983 claim and 28 U.S.C. § 1367 for supplemental pendent jurisdiction on the remaining claims.  *Id.* at 3.   Defendants have filed the present "Motion to Dismiss Amended Complaint," seeking dismissal of all claims.  ECF 49.   The Motion is fully briefed.   As set forth below, this Court **grants in part** and **denies in part** Defendants' Motion.

## BACKGROUND

The following are factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Plaintiff in his Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff alleges that he was a resident and inmate of the Cheyenne Mountain Reentry Center ("CMRC") on January 21, 2018.  Compl. at ¶ 19.   Around 2:45 p.m., other inmates, including Chad Morris ("Mr. Morris"), entered a ductwork above Unit 2A in the CMRC.  *Id.* at ¶ 28.   Plaintiff was in room 14 of Unit 2A when Mr. Morris fell through the ceiling, landing on Plaintiff.  *Id.* at ¶¶ 29–30.   Plaintiff sustained injuries to his head, face, and leg as a result.  *Id.* at ¶ 32. Geo Group and CEC "secured access to the ceiling after the incident."  *Id.* at ¶ 33.

Geo Group and CEC did not immediately send Plaintiff to the medical staff, requiring him to first submit a medical request.  *Id.* at ¶ 34.   Plaintiff filed a request the day of the incident, but he was not taken for a medical check until the next day.  *Id.* at ¶ 36.   The medical staff, including Defendant Serene Beall, L.P.N. ("Defendant Beall"), "were too busy to see Plaintiff" when he arrived, but they saw him later that day.  *Id.* at ¶¶ 37, 39.   Plaintiff "complained of severe headache

pain, blurred vision, memory loss, thigh bruising, and pain/injury around [his] eye, forehead, cheek, and chin." *Id.* at ⁋ 38. On January 23, 2018, Plaintiff saw Sarah-Lynn Nero ("Defendant Nero"), who told Plaintiff that "no physician was notified of [his] condition on January 23, 2018." *Id.* at ⁋ 43. An appointment to see April Caldwell, P.A. ("Defendant Caldwell") was set for February 8, 2018. *Id.* at ⁋ 41.

On January 24, 2018, Plaintiff presented to Mary Rivera, R.N. ("Defendant Rivera") with complaints of "throbbing head pain, blurred vision, dizziness with sudden changes in movement, and new soreness on [his] thigh." *Id.* at ⁋ 44. Defendant Rivera advised Plaintiff to seek medical care for any worsening of his condition, but she did not contact a physician. *Id.* at ⁋ 46. Sometime that day, Defendant Beall diagnosed Plaintiff "with a whiplash type injury" and called Anthony Vecchiarelli, M.D. ("Defendant Vecchiarelli") for pain medications for Plaintiff. *Id.* at ⁋ 47–48. On January 25, 2018, Defendant Caldwell did not physically examine Plaintiff but "ordered a visual [acuity]" test. *Id.* at ⁋ 50. Also, Sherri Ziegler, R.N. ("Defendant Ziegler") documented that "she had no concern for orbit, eye, or head trauma." *Id.* at ⁋ 51.

On January 31, 2018, Plaintiff continued to experience "severe pounding pulsing headache[s] . . . with blurry vision." *Id.* at ⁋ 53. Defendant Nero contacted Defendant Vecchiarelli, "who remotely ordered more pain meds for Plaintiff" without physically examining Plaintiff. *Id.* at ⁋ 54. On February 9, 2018, Defendant Caldwell "examined Plaintiff in person and ordered . . . [x]-rays of Plaintiff's head." *Id.* at ⁋ 57. Plaintiff had x-rays taken of his face on February 12, 2018, but the images showed no fractures. *Id.* at ⁋⁋ 58–59. On February 19, 2018, Geo Group's and CEC's onsite optometrist "referred Plaintiff to an outside ophthalmologist." *Id.* at ⁋ 60. The outside ophthalmologist saw Plaintiff on March 2, 2018, diagnosing him with "traumatic iritis" and recommending "a CT scan of brain and orbit to rule out any orbital fracture

with a follow up in two weeks to review findings." *Id.* at ¶¶ 61–62.  Defendants did not "schedule a CT scan for two weeks," and Plaintiff had to request the status of a CT scan on March 23, 2018. *Id.* at ¶¶ 63–64.

At some point prior to April 9, 2018, Plaintiff left the CMRC facility.  *Id.* at ¶ 66.  On April 9, 2018, Plaintiff received a CT scan, showing "chronic right orbital floor fracture, which was caused by the incident and the lack of care." *Id.* at ¶¶ 66–67.  Plaintiff developed a traumatic brain injury and cognitive deficits "from the failure to treat the orbital floor fracture." *Id.* at ¶¶ 71–72.

## LEGAL STANDARDS

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint.  *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis.  First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.  *Id.* at 680.  Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

Plausibility refers "'to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Khalik v. United Air Lines*,

671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1192. However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## ANALYSIS

As mentioned above, Plaintiff's Complaint asserts five claims against the Defendants. Plaintiff brings four state law negligence claims and one claim pursuant to 42 U.S.C. § 1983. Although Defendants argue for dismissal of all claims, they contend that if the Section 1983 claim is dismissed, this Court should refuse to exercise supplemental jurisdiction over the remaining claims. Mot. at 10. Accordingly, the Court will address that claim first.

I.      **Section 1983**

Plaintiff brings a Section 1983 claim against each Defendant for deliberate indifference to his medical needs in violation of the Eighth Amendment. The Court will proceed by analyzing the claims against Geo Group and CEC first, followed by the Individual Defendants.

      A.      <u>Geo Group and CEC</u>

Defendants argue Plaintiff failed to allege that either Geo Group or CEC maintained an unconstitutional custom, practice, or policy. Mot. at 4–5. Plaintiff responds that his "Complaint provides sufficient factual allegations that Plaintiff was repeatedly complaining and [Defendants] refused to" assist him due to their customs and policies. Resp. at 8.

The Supreme Court has held that "a municipality cannot be held liable under 42 U.S.C. § 1983 merely on account of the unauthorized acts of its agents. To be liable, the municipality must have had an 'official municipal policy of some nature.'" *Dubbs v. Head Start, Inc.*, 326 F.3d 1194, 1215 (10th Cir. 2003) (quoting *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691 (1978)). "[T]o hold the entity liable, the plaintiff must identify an official policy or custom that is the 'direct cause' or 'moving force' behind the constitutional violations." *Aguilar v. Colo. State Penitentiary*, 656 F. App'x 400, 403 (10th Cir. 2016) (quoting *Dubbs*, 336 F.3d at 1216). The policy or custom may be "a formal regulation or policy statement" or "an informal custom that amounts to a widespread practice." *Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017). Also, the plaintiff must demonstrate that "the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). This "deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately

chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (citation omitted).

Plaintiff asserts several improper policies, customs, or practices used by Geo Group and CEC:

> "Defendants maintained unconstitutional policies, practices, and customs regarding medical care for inmates." Compl. at ¶ 74; "It was the policy, custom, or practice of Defendant not to provide sufficient staffing to medically service the inmates as a cost-cutting measure." *Id.* at ¶ 75; "It was Defendants' policy, custom, or practice to make inmates suffer by not providing adequate medical care such as diagnostic studies, which reveal serious medical conditions." *Id.* at ¶ 78; "It was Defendants' policy, custom, or practice to deny medical care even when objective signs and symptoms warranted additional care." *Id.* at ¶ 79; "Defendants have demonstrated a policy to place cost ahead of medical treatment." *Id.* at ¶ 166; and "Defendants have demonstrated a policy, made by those with inadequate medical knowledge, experience, and training[,] to determine which medical procedures recommended by physicians will be provided." *Id.* at ¶ 167.

Most of these allegations are conclusory. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."). For instance, Plaintiff alleges that Geo Group and CEC had a policy of not providing medical care in the form of diagnostic tests when presented with inmates who have objective symptoms warranting additional care. However, Plaintiff admits Defendant Vecchiarelli ordered pain medications for him twice and Defendant Caldwell ordered a visual acuity test and facial x-rays. Compl. at ¶¶ 47, 50, 54, 57. His own allegations belie the customs or policies he asserts Geo Group and CEC maintained.

Two of Plaintiff's allegations find scant factual support in the Complaint. First, Plaintiff alleges Defendants were insufficiently staffed as a cost-cutting measure. *Id.* at ¶ 75. Plaintiff supports this by alleging Defendants were too busy to see Plaintiff when he first arrived after the incident. *Id.* at ¶ 37. Second, Plaintiff claims Geo Group and CEC have a policy of allowing those with inadequate medical knowledge and training to determine medical care. *Id.* at ¶ 167. This

allegation is supported through Defendant Beall, a registered nurse, diagnosing Plaintiff with "a whiplash type injury." *Id.* at ¶ 48. However, Plaintiff's policy and custom allegations suffer "from the common but erroneous pleading tactic that can be summarized as, 'Because it happened to me, it must be a systemic failure.'" *Ramsey v. Southwest Correctional Medical Group, Inc.*, 18-cv-01845-WJM-KLM, 2019 WL 3252181, at *14 (D. Colo. July 19, 2019). Plaintiff "'cannot state a plausible claim of municipal liability by identifying a single incident of alleged violations and then, without any further factual substantiation, contending that such actions were consistent with and caused by a municipal policy.'" *Id.* (quoting *Salazar v. Castillo*, 12-cv-01481-JLK, 2013 WL 69154, at *6 (D. Colo. Jan. 7, 2013)). Accordingly, the Court finds that Plaintiff has failed to plausibly plead any policy or practice necessary to sustain a claim for municipal liability.

In his response, Plaintiff argues that the nurses "were not allowed to order CT scans or MRIs" and "[t]his 'gatekeeping' policy that denied access to the physician was unreasonable and was the 'moving force' behind the constitutional violation." Resp. at 8. There are no facts in the Complaint to support that argument; thus, Plaintiff's assertion that nurses were not allowed to order scans constitutes a new allegation. "Generally, the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir. 2010). There are limited exceptions to this general rule by which a court may consider materials beyond the four corners of the complaint. *Id.* These three exceptions are: "(1) documents that the complaint incorporates by reference; (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity; and (3) matters of which a court may take judicial notice." *Id.* (internal citations and quotations omitted). Plaintiff's response and the new allegation therein do not fall under any of those three exceptions; accordingly, the Court will not consider it in the adjudication of the Motion.

Therefore, based on the above analysis, this Court grants Defendants' Motion with respect to the Section 1983 claim against Geo Group and CEC.

B.    Individual Defendants

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)) (internal citation omitted). A claim for deliberate indifference must satisfy an objective and subjective component. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met if the plaintiff can show that "the harm suffered is sufficiently serious to implicate the Cruel and Unusual Punishment Clause." *Id.* (citation and quotation marks omitted). For a case involving allegations of delay in treatment, the plaintiff must show "'that the delay resulted in substantial harm,' a requirement that 'may be satisfied by' a showing of 'lifelong handicap, permanent loss, or considerable pain.'" *Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018) (quoting *Al-Turki v. Robinson*, 762 F.3d 1188, 1193 (10th Cir. 2014)). "To prevail on the subjective component, the prisoner must show that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Id.* (citation and quotation marks omitted). However, "'an inadvertent failure to provide adequate medical care' does not give rise to an Eighth Amendment violation." *Id.* (quoting *Estelle*, 429 U.S. at 105–06).

1.    Defendants Vecchiarelli and Caldwell

Plaintiff's specific factual allegations against Defendants Vecchiarelli and Caldwell are as follows:

**Defendant Caldwell**: Plaintiff had an appointment to see Defendant Caldwell on February 8, 2018. Compl. at ⁋ 41. Because of ongoing pain, on January 25, 2018, Defendant Caldwell "ordered a visual [acuity]" test but did not physically examine

Plaintiff.  *Id.* at ¶ 50.  On February 9, 2018, Defendant Caldwell "examined Plaintiff in person and ordered . . . [x]-rays of Plaintiff's head."  *Id.* at ¶ 57.

**Defendant Vecchiarelli**:  Defendant Beall called Defendant Vecchiarelli for pain medications for Plaintiff after diagnosing him "with a whiplash type injury."  *Id.* at ¶ 47–48.  On January 31, 2018, Defendant Nero contacted Defendant Vecchiarelli "who remotely ordered more pain meds for Plaintiff" without physically examining Plaintiff.  *Id.* at ¶ 54.

Plaintiff also makes more general allegations against these Defendants.  *See id.* at ¶¶ 164 ("Defendants failed to respond to Plaintiff's request for medical care."); 165 ("Defendants refused timely medical assistance that could have prevented permanent injury to Plaintiff.").   In his response, Plaintiff argues Defendants "Vecchiarelli and Campbell should have known that failing to examine him after persistent complaints following a traumatic blow to his head was insufficient, failing to alleviate a potential risk that should have been perceived, but was not, and satisfies the standard of the Eighth Amendment."  Resp. at 9 (internal quotation marks omitted).

Plaintiff was ultimately diagnosed with a "chronic right orbital floor fracture."  Compl. at ¶ 67.  Even if the Court assumes this injury is "'sufficiently serious'. . . [because it] is so obvious that even a lay person would easily recognize the necessity for a doctor's attention,'" Plaintiff fails to allege sufficient plausible facts to establish the subjective element of his claim.  *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001).  Plaintiff must demonstrate that the "official 'knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of acts from which the inference could be drawn that a substantial risk of serious harm exists, and [he] must also draw the inference.'"  *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

There are no allegations that Plaintiff's orbital fracture was obviously visible to others.  Put differently, Plaintiff presented only with "head pain, vision loss, [and] swelling around [the] head," not a visible bone fracture.  Compl. at ¶ 40.  In response to Plaintiff's complaints, Defendant

Vecchiarelli ordered pain medications for him on two occasions and Defendant Caldwell examined him and ordered a visual acuity test and x-rays. *Id.* at ¶¶ 47, 50, 54, 57. The x-rays revealed no fracture. *Id.* at ¶ 59. Even if Plaintiff is correct that "a CT scan is the modality of choice for assessment of the facial skel[e]ton," the x-rays showed no skeletal damage and Plaintiff alleges no other facts that would make the orbital fracture obvious. *Id.* at ¶ 145. Therefore, Plaintiff alleges insufficient facts demonstrating that either Defendant Vecchiarelli or Defendant Caldwell knew of and disregarded "an excessive risk" to Plaintiff's health. *Mata*, 427 F.3d at 751. Further, this subjective component of Plaintiff's claim "is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment." *Vasquez*, 882 F.3d at 1278 (quoting *Self v. Crum*, 439 F.3d 1227, 1230–33 (10th Cir. 2006)). Plaintiff fails to plead facts creating an "extraordinary degree of neglect" in Defendants Vecchiarelli's and Caldwell's medical decisions. *Id.* For these reasons, Plaintiff does not plausibly plead his Section 1983 claim against them.[2]

Therefore, this Court grants Defendants' Motion with respect to the Section 1983 claims against Defendants Vecchiarelli and Caldwell.

2. Defendants Beall, Nero, Rivera, Nash, and Ziegler

Another type of deliberate indifference occurs "when prison officials prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment." *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). A medical

---

[2] Defendant Vecchiarelli also did not examine Plaintiff in person. Compl. at ¶ 56–57 (stating Plaintiff was only seen by Defendant Caldwell). The Court finds Defendant Vecchiarelli's connection to Plaintiff's alleged mistreatment weakened by having not physically examined Plaintiff. *See Ramsey v. Southwest Correctional Medical Group, Inc.*, 2019 WL 3252181, at * 12 (D. Colo. July 19, 2019) (finding "significant" the fact that a physician never saw the plaintiff and only "called in a prescription").

11

professional is not ordinarily liable under this kind of deliberate indifference, since he directly provides the treatment. *Id.* However, if

> the medical professional knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference, it stands to reason that he may also be liable for deliberate indifference from denying access to medical care.

*Id.* Plaintiff's Section 1983 claims against the remaining Individual Defendants fall under this claim. *See* Compl. at ¶ 174 ("The nurse defendants failed to fulfill their gatekeeper roles by failing to contact a physician."). Plaintiff alleges the following facts against them:

**Defendant Joshua Nash, R.N.** ("Defendant Nash"): There are no specific, substantive allegations against him.

**Defendant Ziegler**: Defendant Ziegler documented that she was not concerned for Plaintiff's "orbit, eye, or head trauma on January 25, 2018." *Id.* at ¶ 51.

**Defendant Rivera**: Presumably on or around January 24, 2018, Defendant Rivera did not "contact a physician," but "continued to advise [Plaintiff] to seek medical" care. *Id.* at ¶ 46.

**Defendant Nero**: On January 23, 2018, Defendant Nero saw Plaintiff, who complained of "head pain, vision loss, swelling around [his] head." *Id.* at ¶ 40. Plaintiff states that no physician was consulted and no pain medications prescribed. *Id.* Defendant Nero even "documented that no physician was notified of Plaintiff's condition on January 23, 2018." *Id.* at ¶ 43. On January 31, 2018, "Defendant Nero contacted Defendant Vecchiarelli who remotely ordered more pain meds for Plaintiff." *Id.* at ¶ 54.

**Defendant Beall**: Defendant Beall was "too busy to see Plaintiff" when he first arrived on January 22, 2018. *Id.* at ¶ 37. She saw Plaintiff "later in the afternoon," but she did not consult a physician. *Id.* at ¶ 39. Three days after the incident, "Defendant Beall finally called . . . Defendant Vecchiarelli" for more pain medications. *Id.* at ¶ 47. Defendant Beall "diagnosed Plaintiff with a whiplash type injury." *Id.* at ¶ 48. Presumably on or around January 25, 2018, she also "advised Plaintiff [that] he was not allowed any further medical care." *Id.* at ¶ 52.

As an initial matter, the Court notes that there are no specific allegations against Defendant Nash. Plaintiff now argues that Defendant Nash "under information and belief, could have

provided treatment and/or care but did not."  Resp. at 12.[3]  That argument finds no factual support in Plaintiff's Complaint.  Thus, the Court finds that Plaintiff has not plausibly pleaded a claim against Defendant Nash and grants Defendants' Motion as to him.

For the other Individual Defendants, the Court begins by looking at the objective component of deliberate indifference.  "A 'medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Mata*, 427 F.3d at 751 (quoting *Sealock*, 218 F.3d at 1209).  "[T]he question raised by the objective prong of the deliberate indifference test is whether the alleged harm . . . is sufficiently serious[,] . . . rather than whether the symptoms displayed to the prison employee are sufficiently serious."  *See Mata*, 427 F.3d at 753.  For this component, "[i]t is sufficient to provide evidence that a delay or deprivation of medical care 'unnecessarily prolonged [plaintiff's] pain and suffering.'"  *Spradley v. LeFlore Cnty. Detention Center Pub. Trust Bd.*, 764 F. App'x 692, 698 (10th Cir. 2019) (quoting *Sealock*, 218 F.3d at 1210 n.5).

In this case, Plaintiff's Complaint sets forth that his orbital fracture went undiagnosed for weeks.  Plaintiff's receipt of pain medication was delayed by days.  Because of the delays, Plaintiff alleges he "sustained a permanent injury."  Compl. at ¶ 81.  The Court finds this sufficient to establish the objective component.  *See Mata*, 427 F.3d at 751 ("The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'") (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

---

[3] Though the page numbers of Plaintiff's response are all "1" after the ninth page, the Court cites to the actual twelfth page.

As to the subjective component, a prisoner needs to show "that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of her condition." *Mata*, 427 F.3d at 755.   Another circuit has recognized that a delay of hours in treatment of a broken bone "is sufficient to state a constitutional claim." *Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990).  However, even that court found that the delay must be "deliberate." *Id.*  In other words, the plaintiff needs to plead that defendants "disregarded [the] risk, by failing to take reasonable measures to abate it." *Spradley*, 764 F. App'x at 701; *see Mata*, 427 F.3d at 755 ("[W]ere the symptoms such that a prison employee knew the risk to the prisoner and chose (recklessly) to disregard it?").  The Tenth Circuit has found "deliberate indifference in cases where jail officials, confronted with serious symptoms, took no appropriate action at all to treat them." *Spradley*, 764 F. App'x at 702 (citing *Sealock*, 218 F.3d at 1210–11).

The Tenth Circuit maintains that "[a] claim is . . . actionable only in cases where the need for additional treatment or referral to a medical specialist is obvious."  *Self*, 439 F.3d at 1232. Obviousness is demonstrated by "direct or circumstantial evidence that can arise in several different contexts," including when (1) the medical professional recognizes his "inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise but nevertheless declines or unnecessarily delays referral;" (2) the medical professional does not treat a condition that even a layman would recognize; and (3) the medical professional "completely denies care although presented with recognizable symptoms which potentially create a medical emergency." *Id.*

Plaintiff states that Defendant Rivera did not contact a physician for him, but she continued to advise him to seek medical care.  Compl. at ⁋ 46.  Defendant Ziegler showed no concern for Plaintiff's "orbit, eye, or head trauma."  *Id.* at ⁋ 51.  These two Defendants took no action to seek

14

a physician consult despite Plaintiff complaining of "severe headache pain, blurred vision, memory loss, thigh bruising, and [pain] around [his] eye, forehead, cheek, and chin." *Id.* at ¶ 38. The Court finds these Defendants' lack of action constitutes a complete denial of medical care even when "presented with recognizable symptoms which potentially create a medical emergency." *Self*, 439 F.3d at 1232. Plaintiff pleaded enough facts to allow the Court to infer that Defendants Rivera and Ziegeler recklessly disregarded the risk of injury. *See Mata*, 427 F.3d at 751. Thus, the Court finds that allegations support a claim for deliberate indifference against these Defendants for failing in their roles as gatekeepers. *Sealock*, 218 F.3d at 1211.

Unlike Defendants Rivera and Ziegler, Defendants Beall and Nero are alleged to have at least treated Plaintiff; that is, they took some remedial measures. *See Spradley*, 764 F. App'x at 702. For Defendant Beall, Plaintiff alleges that she did not consult a physician when she saw him on January 22, 2018, Compl. at ¶ 39, but she did call a physician (Defendant Vecchiarelli) two days later. *Id.* at ¶ 47. The same is true for Defendant Nero. She did not consult or notify a physician when she assessed Plaintiff on January 23, 2018, *id.* at ¶ 43, but she contacted Defendant Vecchiarelli days later. *Id.* at ¶ 54. The question is whether they acted with deliberate indifference in delaying. Although a close call, the Court finds that Plaintiff has stated a plausible claim. Both of these Defendants personally examined Plaintiff; the Court can infer that they were more intimately familiar with Plaintiff's complaints than Defendants Rivera and Ziegler. Yet, in both cases, Defendants Nero and Beall waited days to seek a physician consult to provide Plaintiff pain medication. Given Plaintiff's complaints, the Court finds that a reasonable person would realize the risk to Plaintiff in not referring for further treatment. *See Mata*, 427 F.3d at 751 ("[I]f a risk is obvious so that a reasonable man would realize it, [the court] might well infer that the [defendant] did in fact realize" the risk.). Plaintiff's condition allegedly worsened because of these

15

Defendants' delay; accordingly, Plaintiff has plausibly pleaded a deliberate indifference claim against them based on their gatekeeper status. Therefore, this Court denies Defendants' Motion with respect to the Section 1983 claims against Defendants Rivera, Ziegler, Beall, and Nero in their individual capacities.

Because a suit against an individual in his or her official capacity is essentially a suit against the state or governmental entity, the Court grants Defendants' Motion as to Defendants Rivera, Ziegler, Beall, and Nero in their official capacities for the same reasons provided in granting dismissal of the Section 1983 claim against Geo Group and CEC. *See Sawyers v. Norton*, 962 F.3d 1270, 1278 n.4 (10th Cir. 2020) ("The official capacity claims against Sheriff Norton (under § 1983 and state law) . . . appear to be claims against Rio Grande county, and like the district court, we will treat them as claims against the county.").[4]

## II.   Supplemental Jurisdiction

In the absence of diversity jurisdiction, "Section 1367(a) provides that federal courts have jurisdiction over state law claims for which they otherwise would lack jurisdiction if the state law claims 'are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Deasy v. Optimal Home Care, Inc.*, 17-cv-00287-MSK, 2018 WL 10911745, at *2 (D. Colo. Nov. 2, 2018) (quoting 28 U.S.C. § 1367(a)). "A claim is part of the same case or controversy if it 'derive[s] from a common nucleus of operative fact.'" *Id.* (quoting *City of Chicago v. Int'l Coll. Of Surgeons*, 522 U.S. 156, 165 (1997) (internal quotation marks omitted)). This common nucleus test "is broader than the 'transaction or occurrence' test used in the Civil Rules . . . . In practice, § 1367(a) requires only that the jurisdiction-invoking

---

[4] Moreover, the claims against Defendants Rivera, Ziegler, Beall, and Nero in their official capacities are also dismissed as redundant. *See Ramsey*, 2019 WL 3252181, at *12.

claim and the supplemental claim have some *loose factual connection*." *Millennium Laboratories, Inc. v. Rocky Mountain Tox, LLC*, 10-cv-02734-MSK-KMT, 2011 WL 4736357, at *3 (D. Colo. Oct. 7, 2011).  In its discretion, a district court

> may decline to exercise supplemental jurisdiction over a state law claim only if (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exception circumstance, there are other compelling reasons for declining jurisdiction.

*Gard v. Teletronics Pacing Systems, Inc.*, 859 F. Supp. 1349, 1351 (D. Colo. 1994) (citing 28 U.S.C. § 1367(c)).

In this case, all of Plaintiff's claims stem from the same common nucleus of operative fact. His injuries were caused by the same incident, and his state and federal claims both derive from the alleged denial and delay in medical care.  The Court has dismissed some but not all of the federal claims. *See Morris v. Atha*, 17-cv-02828-WJM-MEH, 2018 WL 3475397, at * 4 (D. Colo. July 19, 2018) ("A district court has discretion to exercise pendent jurisdiction over a claim when it 'has dismissed *all* claims over which it has original jurisdiction.'") (emphasis added) (citing 28 U.S.C. § 1367(c)(3)).  Plaintiff's state law negligence claims do not raise novel or complex issues or substantially predominate over the federal claim.  For these reasons, the Court finds it has supplemental jurisdiction to adjudicate Plaintiff's remaining claims.

**III.   Negligence**

Plaintiff brings Claims 1 (negligence), 2 (negligent training), and 3 (negligent supervision) against Geo Group and CEC.  Plaintiff also brings Claim 4 for medical negligence against all Individual Defendants.

A.      <u>Redundancy</u>

In a footnote, Defendants urge that "all claims against the [I]ndividual Defendants be dismissed as redundant."  Mot. at 5 n.1 (citing *Ramsey*, 2019 WL 3252181, at *12).  Plaintiff does not address this argument in his response.  There is "long-standing authority for the notion that individuals sued in their official capacities are redundant if the governmental entity from whom they work is also a defendant."  *Lyall v. City of Denver*, 319 F.R.D. 558, 569 (D. Colo. 2017).  All Individual Defendants are alleged to be employees of Geo Group.  Compl. at ¶¶ 11–17.  Therefore, Plaintiff's Claims 1 through 4 are dismissed against the Individual Defendants in their official capacities.

B.      <u>Claims 1, 2, and 3 for Negligence</u>

Plaintiff's negligence claims against Geo Group and CEC hinge on their knowledge "about the accessible unsecured hatches that allowed inmates to access the ventilation system in the ceiling" and not preventing inmates gaining access.  Compl. at ¶¶ 93–95.  For Claim 2, Plaintiff asserts that Geo Group and CEC "had a duty to use reasonable care in its training of its staff and personnel."  *Id.* at ¶ 103.  For Claim 3, the gravamen of Plaintiff's claim is that Geo Group and CEC "breached their duty in the supervision of its staff and personnel in that [their] staff and personnel failed to restrict inmates' access to the ceiling ductwork."  *Id.* at ¶ 121.  Plaintiff argues that his "negligence claims should proceed because the negligent act was the failure to secure the hatches."  Resp. at 12.  Defendants respond that Plaintiff's claim "is brought for injuries occurring on property against a 'landowner.'"  Mot. at 10.  Hence, Defendants contend that Plaintiff's claim should have been brought under Colorado's Premises Liability Act, Colo. Rev. Stat. § 13-21-115 ("CPLA"), since that statute provides the exclusive remedy.  Mot. at 10.

"The premises liability act sets forth when a 'landowner' may be held liable for the condition of or activities conducted on its property, and provides the exclusive remedy against a landowner for injuries sustained on the landowner's property." *Henderson v. Master Klean Janitorial, Inc.*, 70 P.3d 612, 613 (Colo. App. 2003) (internal citations omitted).   As such, Defendants are correct that Plaintiff may recover "only pursuant to [the CPLA] and not under any other theory of negligence, general or otherwise." *Sofford v. Schindler Elevator Corp.*, 954 F. Supp. 1459, 1461 (D. Colo. 1997), *superseded on other grounds by rule*, *see Watts v. Home Depot U.S.A., Inc.*, 17-cv-01320-WJM-MEH, 2019 WL 1077369, at *5 n.4 (D. Colo. March 7, 2019).

In *Casey v. Christie Lodge Owners Ass'n, Inc.*, a plaintiff brought a negligence claim "while a guest at Christie Lodge when a storage door under a bunk bed opened and struck her in the shin as she was walking by." 923 P.2d 365, 366 (Colo. App. 1996).  The plaintiff attempted to amend her complaint to assert claims "that [defendant] failed to exercise reasonable care in selecting the person or persons hired to maintain the premises and failed to exercise reasonable care in supervising or retaining the persons hired or in failing to inspect the premises." *Id.* at 369. The Colorado Court of Appeals upheld the trial court's decision to deny the plaintiff's motion to amend, finding that "regardless of the fact that plaintiff's proposed amendment was described as a claim for 'negligent supervision' or 'negligent retention,' because her contentions related to the condition of the property[,] . . . plaintiff" needed to comply with the CLPA. *Id.*

Similar to *Casey*, Plaintiff in this case brings claims under different theories of negligence when the injury is one based on the "condition of or activities conducted on" property and should be for premises liability under the CLPA. *Henderson*, 70 P.3d at 613.  Plaintiff has not brought his claims under the CLPA.  Because of this, Plaintiff fails to plead whether Geo Group or CEC is the "landowner" and does not identify himself as a licensee or invitee. *See* Colo. Rev. Stat. § 13-

21-115.   Crucially, Plaintiff has not pleaded facts demonstrating an "unreasonable failure to exercise reasonable care with respect to dangers created by the landowner of which the landowner actually know or should have known."  Colo. Rev. Stat § 13-21-115(3)(c)(I).  Nor has Plaintiff pleaded facts evincing "the landowner's unreasonable failure to warn of dangers not created by the landowner which are not ordinarily present on property of the type involved and of which the landowner actually knew."  Colo. Rev. Stat § 13-21-115(3)(b)(II).

Plaintiff alleges that an incident of an inmate accessing the ventilation system occurred on January 4, 2018.  Compl. at ¶ 21.  This incident was reported to Geo Group supervisors.  *Id.* at ¶ 22.  Other inmates reported that "it was common knowledge that inmates traveled through the duct system from the common area to the case managers [sic] offices."  *Id.* at ¶¶ 24–27.  However, Plaintiff does not allege a prior instance of an inmate falling through the ceiling.  Plaintiff's allegations establish that Geo Group and CEC knew that inmates would access the ventilation system, but the Court cannot make the leap to find that Geo Group and CEC knew or should have known about the risk that inmates would fall through the ceiling.  For these reasons, Plaintiff has failed to plausibly plead a claim under the CLPA.[5]

C.   Claim 4 for Medical Negligence

Plaintiff brings a claim for medical negligence against all Individual Defendants.  "A medical malpractice action is a particular type of negligence action."  *Day v. Johnson*, 255 P.3d

---

[5] Even if the exclusive remedy is not the CLPA, Plaintiff still fails to plausibly plead his claims under common law negligence.  To establish proximate causation to sustain a claim for negligence, Plaintiff would need to show the "foreseeability of harm."  *Rocky Mountain Planned Parenthood, Inc. v. Wagner*, 467 P.3d 287, 292 (Colo. 2020).  "Where a person should reasonably foresee that his act, or failure to act, will involve an unreasonable risk of harm to another, there is a duty to avoid such harm."  *Leake v. Cain*, 720 P.2d 152, 160 (Colo. 1986).  In this case, since no other inmate had fallen through the ceiling, it is not a foreseeable harm that an inmate would fall through the ceiling, injuring Plaintiff.

1064, 1068 (Colo. 2011).  As with other negligence actions, "the plaintiff must show a legal duty of care on the defendant's part, breach of that duty, injury to the plaintiff, and that the defendant's breach caused the plaintiff's injury."  *Id.* at 1068–69.  The issue of whether a legal duty exists is a question of law "which a court must determine."  *Greenberg v. Perkins*, 845 P.2d 530, 536 (Colo. 1993).  "A physician's duty arises out of a contractual relationship when a physician undertakes to treat or otherwise provide medical care to another."[6]  *Day*, 255 P.3d at 1069.  "To establish a breach of the duty of care in a medical malpractice action, the plaintiff must show that the defendant failed to conform to the standard of care ordinarily possessed and exercised by members of the same school of medicine practiced by the defendant."  *Id.*

Plaintiff generally alleges "Defendants owed Plaintiff the basic right to have adequate health care and not deprive him of necessary care."  Compl. at ¶ 130.  As to Defendants Vecchiarelli and Caldwell, Plaintiff asserts he was owed "a duty to exercise that degree of care and skill exercised by and expected of physicians under the same or similar circumstances."  *Id.* at ¶ 135.  As to the other Individual Defendants, Plaintiff alleges that they "were negligent in treating Plaintiff in that they did not do what a reasonable, ordinary nurse would do treating the Plaintiff and thus their conduct fell below the standard of care required of them."  *Id.* at ¶ 149.

Defendants argue that "Plaintiff's claims of medical negligence are sparse—particularly as they attempt to address a breach of a standard of care or personal participation as to each individual Defendant."  Mot. at 13.  Defendants also cite to *Grassi v. Corrections Corp. of America*, 354 F.

---

[6] Under Colorado law, "in the absence of a special contract, the law implies that a physician employed to treat a patient contracts with his patient" for certain things.  *Day*, 255 P.3d at 1069. The physician contracts that (1) he has the requisite, reasonable degree of skill possessed by others in his profession; "(2) he will use reasonable and ordinary care and diligence in the exercise of his skill . . . to accomplish the purpose for which he is employed; and (3) he will use his best judgment . . . in deciding upon the nature of the injury and the best mode of treatment."  *Id.*

App'x 329, 333 (10th Cir. 2009) for the required allegations of conduct against nurses necessary to establish a claim.  Mot. at 13–14.  The Tenth Circuit, deciding whether a claim could be made against the defendant for the conduct of its employee nurses, held that

> Plaintiffs fail to identify . . . which nurse or nurses were responsible for this alleged mistreatment or to describe with particularity the acts or omissions by them that would give rise to liability.  Even more fundamentally, plaintiffs put forth no evidence establishing the standard of care required of a nursing staff in the situation presented here or whether the staff deviated from that standard.

*Grassi*, 354 F. App'x at 333.

Notably, the Tenth Circuit in *Grassi* analyzed the circumstances for "[c]orporate liability for actions of nurses."  *Id.*  Here, liability is asserted directly against the individual nurses. Moreover, the court in *Grassi* affirmed the trial court's granting of a motion for summary judgment.  *Id.*  In that context, requiring "evidence establishing the standard of care" makes sense. In this case, on a motion to dismiss, the Court looks only to the complaint.  *See Gee,* 627 F.3d at 1186.  Thus, the Court finds *Grassi* distinguishable and inapplicable to this case.

The Court first determines whether Plaintiff plausibly pleads facts to establish a legal duty between himself and the Individual Defendants.  As with the Section 1983 claim, there are no specific allegations against Defendant Nash.  Thus, the Court cannot find that Plaintiff plausibly pleads the existence of a legal duty.  Defendants Vecchiarelli, Caldwell, Nero, and Beall all undertook to "provide medical care to" Plaintiff.  *Day*, 255 P.3d at 1069.  Defendant Vecchiarelli ordered pain medication; Defendant Caldwell ordered tests; and Defendants Nero and Beall physically examined Plaintiff and requested Defendant Vecchiarelli order pain medication for him. From these actions to provide care, the Court finds a legal duty of care between these Defendants and Plaintiff.

Plaintiff has not, though, pleaded sufficient facts to establish the duties of Defendants Ziegler and Rivera. The sole, specific allegation against Defendant Ziegler is that she documented no concern for Plaintiff's "orbit, eye, or head trauma." Compl. at ¶ 51. That allegation is insufficient to allow the Court to determine what, if any, medical care Defendant Ziegler provided. The same is true for Defendant Rivera, who allegedly advised Plaintiff to continue to seek medical care. *Id.* at ¶ 46. Plaintiff's allegation does not establish that Defendant Rivera provided any medical care. *See Greenberg*, 845 P.2d at 536 ("[I]f a physician undertakes *to diagnose, treat, or otherwise care* for a person, an action will lie if he performs these functions negligently.") (emphasis added). Thus, the Court finds no legal duty as to either Ziegler or Rivera and dismisses Claim 4 against them.

Concerning the Defendants with a duty of care, Plaintiff pleads sufficient facts establishing the remaining elements for a medical negligence claim. Plaintiff alleges that Defendants Vecchiarelli and Caldwell "provided no proper medical care for a head injury" and ordered the wrong kinds of medical imaging tests. Compl. at ¶ 144–145. As Plaintiff asserts, these Defendants' "treatment of Plaintiff fell below the applicable standard of care." *Id.* at ¶ 150. Defendant Nero physically examined Plaintiff but did not quickly consult with a doctor. *Id.* at ¶ 40. Defendant Beall did the same thing, but she also "diagnosed Plaintiff with a whiplash" injury. *Id.* at ¶ 48. Plaintiff alleges Defendants Nero and Beall did not act as "reasonable, ordinary nurse[s] would do." *Id.* at ¶ 149. These facts go to the element of breach by demonstrating "that the[se] defendant[s] failed to conform to the standard of care ordinarily possessed and exercised by members of the same school of medicine practiced by" them. *Day*, 255 P.3d at 1069. Finally, Plaintiff alleges that these Defendants' negligence was "a direct and proximate" cause of Plaintiff's injuries and damages. Compl. at ¶ 151. Based on the allegations, the Court finds Plaintiff has

plausibly pleaded that the cause of his injuries was the Defendants' conduct. *See Laughman v. Girtakovskis*, 374 P.3d 504, 506 (Colo. App. 2015).[7]

## IV.    Leave to Amend

"In dismissing a complaint for failure to state a claim, the court should grant leave to amend freely 'if it appears at all possible that the plaintiff can correct the defect.'" *Triplett v. LeFlore Cty., Oklahoma*, 712 F.2d 444, 446 (10th Cir. 1983) (quoting 3 Moore's Federal Practice, ¶ 15.10 & n. 2 (1983)). However, "[a]t least outside of the pro se context, when a litigant fails to put the district court on adequate notice—in a legally cognizable manner—of his request for leave to amend, then the district court will not be faulted for failing to grant leave to amend." *Doe v. Heil*, 533 F. App'x 831, 847 (10th Cir. 2013). In this case, Plaintiff is represented by counsel, and Plaintiff already amended his complaint once as a matter of course. Plaintiff has made no subsequent attempt to amend. If the Court were to grant leave now, it would be acting *sua sponte*. The Court will not do so. *Id.* ("[W]e will not upset the district court's dismissal with prejudice on the grounds that it failed sua sponte to give [the plaintiff]—who was represented by counsel—an opportunity to file an amended complaint."); *see Burger King Corp. v. Weaver*, 169 F.3d 1310, 1318 (11th Cir. 1999) ("Although leave to amend should be liberally granted, a trial court is not required to sua sponte grant leave to amend prior to making its decision [to dismiss].").

---

[7] In a footnote at the end of their Reply, Defendants assert that Plaintiff's medical negligence claims should be dismissed "based on a failure to provide proper certificate of review required under C.R.S. § 13-20-602(1)(a)." Reply at 15 n.2. The adequacy of a certificate of review does not raise a jurisdictional question that this Court must address. *See Miller v. Rowtech, LLC*, 3 P.3d 492, 494 (Colo. App. 2000). Also, this argument was not raised in Defendants' motion. "When a party puts forth new arguments in a reply brief, a court may avoid error by either: (1) permitting the non-moving party to file a surreply or (2) choosing not to rely on the new arguments in determining the outcome of the motion." *Alpine Bank v. Hubbell*, 05-cv-00026-EWN-PAC, 2007 WL 219121, at *2 (D. Colo. Jan. 26, 2007) (citing *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006)). Here, the Court will not rely on Defendants' novel argument.

Accordingly, in those instances in which the Court grants Defendants' Motion, the Court does so with prejudice.

**<u>CONCLUSION</u>**

For the reasons stated above, Defendants' Motion to Dismiss [filed May 21, 2020; ECF 49] is **granted in part** and **denied in part**.  Claims 1, 2 and 3 against Geo Group and CEC are dismissed with prejudice.  Claim 4 for medical negligence may proceed against Defendants Vecchiarelli, Caldwell, Nero, and Beall in their individual capacities; the claim is dismissed with prejudice as to Defendants Ziegler and Rivera.  Claim 5 for deliberate indifference pursuant to 42 U.S.C. § 1983 may proceed against Defendants Nero, Beall, Rivera, and Ziegler in their individual capacities; the claim is dismissed with prejudice as to Defendants Geo Group, CEC, Vecchiarelli, and Caldwell.

Entered this 11th day of September, 2020, at Denver, Colorado.

BY THE COURT:

Michael E. Hegarty
United States Magistrate Judge