IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00179-MEH

SHAWN ALLEN,

    Plaintiff,

v.

ANTHONY VECCHIARELLI, M.D., in his individual capacity,
APRIL CALDWELL, P.A., in her individual capacity,
SARAH-LYNN NERO, in her individual capacity,
SERENE BEALL, L.P.N., in her individual capacity,
MARY RIVERA, R.N., in her individual capacity, and
SHERRI ZIEGLER, R.N., in her individual capacity,

    Defendants.

___

# ORDER
___

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is Defendants' "Motion for Summary Judgment" ("Motion"). ECF 79. The Motion is fully briefed, and the Court finds that oral argument would not materially assist in its adjudication. For the following reasons, the Motion is granted in part.

## BACKGROUND

    Plaintiff was an inmate who was transferred to Cheyenne Mountain Re-Entry Center ("CMRC"). While there, other inmates attempted to escape by climbing through the ventilation system. As they crawled through the air ducts, the ceiling material above Plaintiff fell onto him. Plaintiff suffered injuries as a result. Defendants are medical professionals who treated Plaintiff following this incident. Plaintiff alleges that they were medically negligent in treating him and deliberately indifferent in failing to provide additional treatment or referrals to other providers.

Plaintiff filed suit on January 21, 2020. ECF 1, Compl. On April 30, 2020, he filed the operative Amended Complaint. ECF 40, Am. Compl. In that pleading, Plaintiff named all current Defendants plus two others (The Geo Group, Inc. and Joshua Nash, R.N.) and brought five claims. *Id.* Following a ruling on Defendants' motion to dismiss, only two claims survived: (1) Claim 4 for medical negligence against Defendants Vecchiarelli, Caldwell, Nero, and Beall; and (2) Claim 5 for deliberate indifference pursuant to 42 U.S.C. § 1983 against Defendants Nero, Beall, Rivera, and Ziegler in their individual capacities. ECF 65. All other claims, including claims against The Geo Group, Inc. and Joshua Nash, were dismissed. *Id.* Defendants now move for summary judgment on the remaining two claims.

## STANDARDS OF REVIEW

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the moving party has the burden of proof—the plaintiff on a claim for relief or the defendant on an affirmative defense— his[, her, or its] showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Leone v. Owsley*, 810 F.3d 1149, 1153 (10th Cir. 2015) (quoting *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986)). "In other words, the evidence in the movant's favor must be so powerful that no reasonable jury would be free to

disbelieve it. Anything less should result in denial of summary judgment." *Id*. at 1154 (quoting 11 Moore's Federal Practice, § 56.40[1][c] (Matthew Bender 3d Ed. 2015)). Only evidence for which the content and substance are admissible may be considered when ruling on a motion for summary judgment. *Johnson v. Weld Cty., Colo.*, 594 F.3d 1202, 1210 (10th Cir. 2010).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined. *Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."); *see also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324); *see Mountain Highlands, LLC v. Hendricks*, 616 F.3d 1167, 1170 (10th Cir. 2010) ("On those issues for which it bears the burden of proof at trial, the nonmovant "must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [its] case in order to survive summary judgment.") (quoting *Cardoso v. Calbone*, 490 F.3d 1194, 1197 (10th Cir. 2007)). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## STATEMENT OF UNDISPUTED MATERIAL FACTS

To begin, the Court notes that Plaintiff has submitted a response brief that violates this Court's Practice Standards. Those state:

> Any party opposing the motion for summary judgment shall include a separate section in its response admitting or denying each of the moving party's undisputed facts. Each admission or denial shall be contained in a separately numbered paragraph corresponding to the moving party's paragraph numbering. Each denial shall be accompanied by a brief factual explanation and a specific reference to evidence in the record supporting the denial.

MEH Practice Standards § III.F (available on the court's website at cod.uscourts.gov). Moreover, Plaintiff did not comply with Rule 56 of the Federal Rules of Civil Procedure which provides that a "party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

Here, Plaintiff did not provide a section admitting or denying any of the facts propounded by Defendants. Instead, Plaintiff's response contains an "Introduction" section which reiterates allegations made in the Amended Complaint in paragraph form. In fact, this section does not cite to a single piece of evidence in the record, relying solely on citations to the Amended Complaint. This is improper both under this Court's Practice Standards and the Federal Rules of Civil Procedure. Accordingly, the Court will treat each of Defendants' facts, when supported by evidence in the record, as undisputed for purposes of summary judgment. Fed. R. Civ. P. 56(e)(2) ("If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . consider the fact undisputed for purposes of the motion."). With that in mind, the following are the Court's findings of material facts that are relevant to the Court's analysis and either undisputed or supported by the record, when viewed in the light most favorable to Plaintiff as the non-moving party.

1. Plaintiff was an inmate in the custody of the Colorado Department of Corrections ("CDOC") when he was transferred to CMRC in January 2018. Am. Compl. at 7, ¶ 19.[1]

2. In January 2018, CMRC was a privately operated prison providing services pursuant to a contract with the CDOC. *Id*. at 5, ¶ 10. Defendants Vecchiarelli, Caldwell, Nero, Beall, Rivera, and Ziegler were all healthcare professionals working at CMRC at that time. Defendant Vecchiarelli is a medical doctor; Defendant Caldwell is a physician's assistant; and Defendants Nero, Beall, Rivera, and Ziegler were all nurses. *Id*. at 5–6, ¶¶ 11–17.

3. Plaintiff claims to have been in his room at CMRC when something fell on him from the ceiling, allegedly caused by other inmates attempting to escape through the ductwork. *Id.* at 1.

4. Plaintiff did not go to the medical clinic immediately after the incident, allegedly due to fear of being seen as snitching on the inmates attempting to escape. In fact, he did not go to the medical clinic until a staff member took him there the next day. ECF 79-1, Def. Ex. 1 (S. Allen Dep.) at 197–99.

5. Plaintiff was seen in the medical clinic at CMRC on January 22, 2018 by Defendant Beall. Plaintiff reported a headache and tenderness on the left side of his face as well as blurry vision in the left eye. Bruising was noted around his left eye and to his right thigh. He had clear speech, answered in full sentences, and denied any other issues. He was ordered to have neuro checks twice a day for three days due to a possible head injury, and a follow up appointment with Defendant Caldwell was scheduled for February 8, 2018. ECF 79-2, Def. Ex. 2.

6. During a neuro check on January 23, 2018, Defendant Nero noted complaints of 8/10 headache and blurry vision to the left eye. Redness was noted to the sclera of that eye and a bruise

---

[1] When Defendants cite to the Amended Complaint, the Court treats that citation as an admission of the alleged fact for purposes of summary judgment. Fed. R. Civ. P. 56(e)(2).

with minimal swelling was observed. The left eye was slow to track but the pupils were equal and reactive to light. Plaintiff was instructed to seek medical attention if his symptoms worsened or had not improved after forty-eight hours. The review notes from this encounter indicate that Plaintiff was to be called down by nursing for further evaluation of his left eye complaints. ECF 79-3, Def. Ex. 3.

7.  Plaintiff was seen on January 24, 2018, by Defendant Beall for complaints of increased pain to his right thigh and increased tightness in his neck. He reported that vision had not improved or worsened since the date of his injury. A small amount of swelling that had not been present previously was noted to the back of Plaintiff's head. An appointment was scheduled with Joshua Nash for January 25, 2018, and Defendant Vecchiarelli was called for orders of pain medication. ECF 79-4, Def. Ex. 4.

8.  Plaintiff was also seen on January 24, 2018, by Defendant Rivera for another neuro check. Plaintiff complained of "mild intermittent pain on top and back of head" and "mild intermittent dizziness with sudden changes in movement." Redness to the left eye was noted but questions were answered appropriately, and the pupils were equally reactive to light. ECF 79-5, Def. Ex. 5.

9.  Plaintiff was seen in medical by Defendants Ziegler and Caldwell on January 25, 2018 for a visual acuity check. Defendant Caldwell noted the following:

> Exam of the eye in clinic showed a L lateral subconjunctival hemorrhage that did NOT encroach on the iris, let alone the pupil. EOMI, PERRLA. No edema, ecchymosis, erythema, lacerations, etc to suggest trauma sustained to the eye or orbit. If not for written reports of possible trauma, would not have known, as there were no s/sx of such. Pt speaking in full, complete, logical sentences without pause, stuttering, or pressured speech. In fact, he became quite animated when began questioning him about his R hand jewelry. NO concern at this time for orbit, eye, or head trauma. Pt was advised to kite the optometrist regarding an eye exam.

ECF 79-6, Def. Ex. 6.

6

10.     Plaintiff was seen in medical on January 31, 2018 after declaring a "medical emergency" for a severe headache. Defendant Nero noted stable vital signs and "neuro's" within normal limits. Plaintiff's pupils were equal and reactive to light with reported left eye blurry vision and light sensitivity. A small bump was noted underneath Plaintiff's left eye, which could not be visualized but could be palpated. Bruising remained, but the redness "appear[ed] to be decreasing comparatively from previou[s] assessment." Defendant Nero noted Plaintiff already had an appointment scheduled for February 8 and obtained orders for ibuprofen and acetaminophen from Defendant Vecchiarelli. ECF 79-7, Def. Ex. 7.

11.     Plaintiff was seen in medical on February 9, 2018 by Defendant Caldwell. At that time, he complained of ongoing blurred vision and headaches. He stated he could not "read as long as he used to without feeling tired and his vision blurring the L eye." Additionally, Defendant Caldwell acknowledged that Plaintiff "reports he feels not as crisp mentally – like he is having less intelligent conversations." Defendant Caldwell noted PERRLA, EOMI,[2] resolving subconjunctival hemorrhage, and a "tender, nonmobile nodularity to the lateral, superior zygomatic arch on the left – less than 1 cm diameter and not visible (just palpable)." She ordered Excedrin and a facial series of x-rays, with referral to optometry for persistent complaints of blurry vision. ECF 79-8, Def. Ex. 8.

12.     X-rays were performed on February 12, 2018 and were interpreted as showing no fracture. ECF 79-9, Def. Ex. 9.

---

[2] PERRLA is an abbreviation for "Pupils Equal, Round, React to Light, and Accommodation," and EOMI is an abbreviation for "Extra Ocular Movement (or Muscles) Intact." *Lowes v. Comm'r of Soc. Sec.*, No. 12-13077, 2013 WL 4413751, at *9 n.4 & 5 (E.D. Mich. Aug. 15, 2013) (quotations omitted).

13.     Plaintiff was seen at CMRC by an optometrist on February 19, 2018. Follow-up in one to two weeks was recommended, and the documents were sent to "CHP" in order to clear the request. ECF 79-10, Def. Ex. 10.

14.     Plaintiff was seen on March 2, 2018 by Dr. Eric Blom at Rocky Mountain Eye Center ("RMEC") for evaluation of his left eye vision complaints. Dr. Blom conducted an evaluation, noted a diagnosis of iridocyclitis, and requested that Plaintiff's facility request a CT scan to rule out orbital fracture. He prescribed eye drops. ECF 79-11, Def. Ex. 11.

15.     Plaintiff was seen on March 2, 2018, by Defendant Ziegler at CMRC upon his return from RMEC. Defendant Vecchiarelli was contacted about the recommended medications from the ophthalmologist and instructions were provided concerning eye drops. ECF 79-12, Def. Ex. 12.

16.     A specialty consult request was submitted on March 28, 2018 for another off-site ophthalmology visit. ECF 79-13, Def. Ex. 13.

17.     Following his departure from CMRC on April 2, 2018, Plaintiff was seen in the clinic at the Denver Reception and Diagnostic Center after declaring an emergency for his headache. A review of the chart on that date indicated that he was scheduled for a CT scan on April 18, 2018. ECF 79-14, Def. Ex. 14.

18.      However, a CT scan was done earlier at the Medical Center of Aurora on April 9, 2018, which was interpreted to reveal a "chronic appearing right orbital floor fracture." ECF 79-15, Def. Ex. 15.

19.     Plaintiff was subsequently transferred to Limon Correctional Facility ("LCF") and was seen on May 30, 2018 for a new intake appointment. The orbital floor fracture was noted and a consultation request for a visit with an oral surgeon was submitted. ECF 79-16, Def. Ex. 16.

8

20.     Although the option of surgery was raised at one point in October 2018, it was offered for "cosmetic reasons." It was unclear that the orbital fracture was causing any ongoing "visual deficits." It was also unclear whether surgery would help Plaintiff with his reported pain. ECF 79-17, Def. Ex. 17.

21.     Plaintiff claims that Defendants "failed to treat Plaintiff's orbital floor fracture with immediate surgical intervention as he needed" and that he "developed a traumatic brain injury from the failure to treat the orbital floor fracture." Am. Compl. at 11, ¶ 71.

22.     Plaintiff has not endorsed any retained experts and has only endorsed treating providers as non-retained experts. ECF 79-18, Def. Ex. 18.

23.     Defendants have endorsed certain of Plaintiff's treating providers as non-retained experts, and have also endorsed Susan Tiona, M.D., as a retained expert. Dr. Tiona has authored a report providing opinions, including that all named Defendants met the appropriate standard of care, that there was "no reason for any of the defendants to suspect, much less disregard, an excessive risk to inmate health or safety," and that Plaintiff's "current medical situation was in no way caused by any action or inaction on the part of [Defendants]." ECF 79-19, Def. Ex. 19 at 20.

24.     Dr. Tiona further opined that, "[c]ontrary to Mr. Allen's complaint, traumatic brain injury is not caused by an orbital fracture" and that "choice of varying evaluation and treatment strategies with regard to an orbital fracture does not impact the long-term outcome of TBI." *Id*. at 19.

25.     Finally, Dr. Tiona reviewed records relating to Plaintiff's medical history, including a significant history of head trauma going back years, some of which was self-inflicted during his incarceration with the CDOC. *Id*. at 16–17. This led Dr. Tiona to opine that "[t]he chronicity and origin of Mr. Allen's right orbital fracture is not known." *Id*. at 16.

## ANALYSIS

As mentioned earlier, Plaintiff's remaining claims are for medical negligence against Defendants Vecchiarelli, Caldwell, Nero, and Beall and deliberate indifference pursuant to 42 U.S.C. § 1983 against Defendants Nero, Beall, Rivera, and Ziegler. Defendants seek summary judgment on both claims. The Court will address the federal law claim first.

### I. Deliberate Indifference

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)) (internal citation omitted). A claim for deliberate indifference must satisfy an objective and subjective component. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). The objective component is met if the plaintiff can show that "the harm suffered is sufficiently serious to implicate the Cruel and Unusual Punishment Clause." *Id.* (citation and quotation marks omitted). "To prevail on the subjective component, the prisoner must show that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Id.* (citation and quotation marks omitted). "'[A]n inadvertent failure to provide adequate medical care' does not give rise to an Eighth Amendment violation." *Id.* (quoting *Estelle*, 429 U.S. at 105–06). Here, the Court begins by examining the subjective component.

On that component, Tenth Circuit caselaw recognizes two types of conduct that constitute deliberate indifference. First, there are cases in which a medical professional fails to treat a serious medical condition properly. *Sealock*, 218 F.3d at 1211. Second, deliberate indifference can exist when there are instances of prison officials preventing an inmate from receiving treatment or

10

denying him access to the appropriate personnel capable of providing or evaluating the need for treatment. *Id.*

The Tenth Circuit has held that disagreeing with prison officials regarding "a particular course of treatment" does not satisfy the subjective prong of a deliberate indifference claim. *Callahan*, 471 F.3d at 1160; *see Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (finding no cruel and unusual punishment when prisoner received medication but did not receive elective surgery sooner). Additionally, in the case of a doctor, "the subjective component is not satisfied, absent an extraordinary degree of neglect, [when] a doctor merely exercises his considered medical judgment." *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006). Actions that "fall within the scope of medical judgment are such decisions as whether to consult a specialist or undertake additional medical testing." *Id.* Those decisions generally do not violate the Eighth Amendment. *Estelle*, 429 U.S. at 107 ("a matter for medical judgment . . . . does not represent cruel and unusual punishment"). Instead,

> [a] claim is therefore actionable only in cases where the need for additional treatment or referral to a medical specialist is obvious. And obviousness in the circumstances of a missed diagnosis or delayed referral, while not subject to a precise formulation, requires direct or circumstantial evidence that can arise in several different contexts: (1) a medical professional recognizes an inability to treat the patient due to the seriousness of the condition and his corresponding lack of expertise but nevertheless declines or unnecessarily delays referral, *e.g.,* a family doctor knows that the patient needs delicate hand surgery requiring a specialist but instead of issuing the referral performs the operation himself; *see, e.g., Oxendine,* 241 F.3d at 1279; (2) a medical professional fails to treat a medical condition so obvious that even a layman would recognize the condition, *e.g.,* a gangrenous hand or a serious laceration; *see id.;* and (3) a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency, *e.g.,* a patient complains of chest pains and the prison official, knowing that medical protocol requires referral or minimal diagnostic testing to confirm the symptoms, sends the inmate back to his cell. *See, e.g., Mata,* 427 F.3d at 755–59; *Sealock,* 218 F.3d at 1211–12.

*Self*, 439 F.3d at 1232.

In this case, Plaintiff was seen in the medical clinic at CMRC on January 22, 2018 by Defendant Beall for the ceiling falling on him the previous day. Def. Ex. 2. Plaintiff reported blurry vision, a headache, and tenderness on the left side of his face, and Defendant Beall noted some bruising around his left eye and to his right thigh. *Id.* He was ordered to have neuro checks twice a day for three days due to the possible head injury. *Id.* During one such neuro check, Defendant Nero noted continued complaints of headache and blurry vision. Def. Ex. 3. Plaintiff was instructed to seek medical attention if his symptoms worsened or had not improved after forty-eight hours. *Id.* The next day, Defendant Beall saw Plaintiff again for complaints of increased pain to his right thigh and increased tightness in his neck. Def. Ex. 4. Plaintiff reported that vision had not improved or worsened since the date of his injury. Defendant Beall noted a small amount of swelling on the back of Plaintiff's head. *Id.* An appointment was scheduled with Joshua Nash for January 25, 2018, and Defendant Vecchiarelli was called for orders of pain medication. *Id.*

Defendants Ziegler and Caldwell saw Plaintiff on January 25, 2018 for a visual acuity check. Def. Ex. 6. Defendant Caldwell noted that there were no visible signs of injury and thus no concern at this time for orbit, eye, or head trauma. *Id.* She advised Plaintiff to kite the optometrist regarding an eye exam. *Id.* After declaring a medical emergency for a severe headache, Plaintiff was seen in medical on January 31, 2018. Def. Ex. 7. Defendant Nero noted stable vital signs and "neuro's" within normal limits. *Id.* A small bump was noted underneath Plaintiff's left eye, which could not be visualized but could be palpated. *Id.* Defendant Nero found that some bruising remained, but the redness "appear[ed] to be decreasing comparatively from previou[s] assessment." *Id.* Noting that Plaintiff already had an appointment scheduled for February 8, Defendant Nero obtained orders for ibuprofen and acetaminophen from Defendant Vecchiarelli. *Id.*

Defendant Caldwell saw Plaintiff on February 9, 2018. Def. Ex. 8. There, Plaintiff complained of ongoing blurred vision and headaches and stated that he could not "read as long as he used to without feeling tired and his vision blurring the [left] eye." *Id.* Defendant Caldwell ordered Excedrin and a facial series of x-rays, with referral to optometry for persistent complaints of blurry vision. *Id.* The x-rays taken on February 12, 2018 showed no fracture. Def. Ex. 9. A week later, Plaintiff was seen at CMRC by an optometrist. Def. Ex. 10. On March 2, 2018, Plaintiff was seen both by Dr. Blom at RMEC for evaluation of his left eye vision complaints and Defendant Ziegler after his return from RMEC. Def. Ex. 11; Def. Ex. 12. Dr. Blom conducted an evaluation, noted a diagnosis of iridocyclitis, requested that Plaintiff's facility request a CT scan to rule out orbital fracture, and prescribed eye drops. Def. Ex. 11. Defendant Ziergler contacted Defendant Vecchiarelli about the recommended medications from the ophthalmologist and provided instructions to Plaintiff concerning the eye drops. Def. Ex. 12. Plaintiff submitted a specialty consult request on March 28, 2018 for another off-site ophthalmology visit. Def. Ex. 13. Plaintiff departed from CMRC on April 2, 2018. Def. Ex. 14. On April 9, 2018, a CT scan was done at the Medical Center of Aurora, which showed a "chronic appearing right orbital floor fracture." Def. Ex. 15.

Before analyzing whether such facts establish the subjective component, the Court first notes that Plaintiff improperly argues under the Rule 12(b)(6) standard and not the Rule 56 standard. Resp. at 12 ("[D]efendants argue that the allegations in the complaint do not sufficiently allege that these named defendants participated in the challenged activity"), 13 ("The facts 'raise a right to relief above the speculative level.'" (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), 14 ("Based on the *facts alleged* and the arguments above, [it] is reasonable to infer that Defendants were informed that Plaintiff's medical condition was serious and refused to

provide care.") (emphasis added), 15 ("Throughout the amended complaint Plaintiff alleged that even though his condition worsened no physician was notified"). This is confirmed by Plaintiff's exclusive reliance on allegations in his Amended Complaint as the basis to defeat summary judgment. But, of course, summary judgment is defeated by pointing to a genuine issue of material fact through citations to "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "Unsubstantiated allegations carry no probative weight in summary judgment proceedings." *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

Based on the evidence in the record, the Court finds no genuine dispute of material fact that Defendants did not possess the requisite culpable state of mind to satisfy the subjective component. Plaintiff only had two relevant interactions with Defendant Beall, neither of which demonstrate a reckless disregard for Plaintiff's health. First, Defendant Beall saw Plaintiff a day after the incident (because Plaintiff chose not to go to the medical clinic the day it happened). Def. Ex. 1 at 197–99. She ordered him to have a neuro check twice a day. Def. Ex. 2. Second, she saw him two days later for increased pain. Def. Ex. 4. She called Defendant Vecchiarelli to obtain orders for pain medication and to refer Plaintiff to another provider. *Id.* Similarly, Defendant Nero had two relevant interactions with Plaintiff. On January 23, 2018, she saw Plaintiff for one of his neuro checks. Def. Ex. 3. She indicated an intent to notify Plaintiff's provider and to send his chart for review. *Id.* About a week later, she saw Plaintiff for his emergency headache. Def. Ex. 7. She again noted that she would send the chart to Plaintiff's provider for review. *Id.* She observed Plaintiff was already scheduled for a follow-up appointment and ordered Tylenol. *Id.*

Likewise, the interactions with Defendants Rivera and Ziegler do not evince deliberate indifference. Defendant Rivera only saw Plaintiff once when she conducted a neuro check. Def. Ex. 5. The neuro check revealed normal findings, and the record indicates that a verbal order was received from Defendant Vecchiarelli for Tylenol. *Id.* Defendant Ziegler first saw Plaintiff on January 25, 2018 when she and Defendant Caldwell assessed Plaintiff through a visual acuity check. Def. Ex. 6. That exam suggested no concern for eye or head trauma. *Id.* She then saw Plaintiff on March 2, 2018 after his appointment with RMEC. Def. Ex. 12. She contacted Defendant Vecchiarelli regarding medications to be ordered. *Id.*

The crux of Plaintiff's argument is that these Defendants should have done more for Plaintiff.[3] But "where a [medical professional] orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifferent is unwarranted under [Tenth Circuit] case law." *Self*, 439 F.3d at 1232–33. Plaintiff had numerous visits with these Defendants, the results of which included ordering medications, tests, and referrals to other providers. Other than some swelling and bruising, there was no obvious indication of an orbital fracture. *Id.* at 1232 (holding that a claim is only actionable when the need is obvious). Indeed, the x-rays taken of Plaintiff revealed no such injury. The record is devoid of evidence demonstrating that the Defendants knew Plaintiff's injury was more severe or recklessly disregarded Plaintiff's health by failing to provide further care or referral to other providers in a more expedient manner. Nor, as the Court already described, can Plaintiff's unsubstantiated

---

[3] Plaintiff makes other arguments as to why Joshua Nash, Defendant Vecchiarelli, and Defendant Caldwell were also deliberately indifferent to his medical needs. Resp. at 13. However, the Court previously dismissed the deliberate indifference claim against those individuals. ECF 65 at 11, 12–13. Plaintiff also suggests that *Monell* liability may exist. Resp. at 15–16. But the Court previously dismissed the entity (The Geo Group, Inc.) and the official capacity claims against all individual defendants. ECF 65 at 25. Moreover, the Amended Complaint does not assert a *Monell* claim. For these reasons, the Court declines to consider Plaintiff's additional arguments.

allegations in the Amended Complaint remedy this defect. *Bones*, 366 F.3d at 875 ("To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."). Thus, based on Plaintiff's condition and symptoms at the time Defendants evaluated him, their actions do not satisfy the subjective element of a deliberate indifference claim. *Self*, 439 F.3d at 1233 ("[O]ur subjective inquiry is limited to consideration of the doctor's knowledge at the time he prescribed treatment for the symptoms presented, not to the ultimate treatment necessary.") (citation omitted).[4]

## II. Supplemental Jurisdiction

No party currently raises[5] the issue of supplemental jurisdiction, but it is one the Court must address. *See Hubbard v. Okla. ex rel. Okla. Dep't of Human Servs.*, 759 F. App'x 693, 714–15 (10th Cir. 2018). In the absence of diversity jurisdiction, "28 U.S.C. § 1367(c)(3) provides that a district court has the discretion to decline to exercise supplemental jurisdiction over a state law claim if 'the district court has dismissed all claims over which it has original jurisdiction.'" *VDARE Found. v. City of Colo. Springs*, 449 F. Supp. 3d 1032, 1051 (D. Colo. 2020); *see also Smith v. City of Enid ex. rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims.") (emphasis added). "'[N]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary.'" *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)), *abrogated on other grounds by Torres v. Madrid*, 141 S. Ct. 989 (2021); *see also Kinney v. Blue Dot Serv. of Kan.*, 505 F. App'x 812, 814–15 (10th Cir. 2012) (affirming district

---

[4] As such, the Court does not need to address the objective component.
[5] Defendants previously requested that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims in their motion to dismiss. ECF 49 at 10.

court's decision to not exercise supplemental jurisdiction over state law claims when federal claims were dismissed).

Here, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law medical negligence claim for three reasons. First, the Tenth Circuit expressed a strong preference for trial courts to decline the exercise of supplemental jurisdiction when all federal claims have been dismissed.[6] *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997) ("If federal claims are dismissed before trial, leaving only issues of state law, 'the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice.'") (quotation omitted). Second, "[t]he Court concludes that any potential delay or duplication resulting from a dismissal without prejudice does not constitute a compelling reason to retain jurisdiction." *U.S. v. Ledford*, No. 10-cv-01351-PAB-MEH, 2012 WL 1079552, at *3 (D. Colo. Mar. 30, 2012); *see also Hamilton v. Upper Crust, Inc.*, No. 10-CV-0718-CVE-PJC, 2011 WL 3880932, at *10 (N.D. Okla. Sep. 2, 2011) ("The Court finds that the Tenth Circuit's expressed preference for declining pendent jurisdiction outweighs the parties' slight interest in preventing delay."). Third, "the Court notes that 'Colorado law recognizes if a plaintiff asserts all of his or her claims, including state

---

[6] As one court has aptly noted, though, "the parameters of the Court's discretion, if any, to exercise supplemental jurisdiction are far from clear." *Sisneros v. Taylor*, No. 09-cv-01646-PAB-MJW, 2011 WL 2292194, at *1 (D. Colo. June 8, 2011). That court recognized that there are Tenth Circuit decisions which "can be construed as finding that it can never be an abuse of discretion to *decline* to exercise supplemental jurisdiction." *Id.* at *1 n.4 (citing *Muller v. Culbertson*, 408 F. App'x 194, 197 (10th Cir. 2011)). Put differently, under such an understanding, "only the retention of jurisdiction can lead to claims of error. It is unclear, however, under what circumstances it would be an abuse of discretion to do so." *Id.* Compare *Jensen v. Reeves*, 3 F. App'x 905, 911 (10th Cir. 2001) (finding no abuse of discretion in exercise of supplemental jurisdiction over state claims when all federal claims had been dismissed), *with Sandberg v. Englewood, Colo.*, 727 F. App'x 950, 965 (10th Cir. 2018) (concluding "the district court erred by exercising jurisdiction over the state law claims after it had dismissed the federal causes of action"). Given the uncertainty, the Court relies heavily on the abundance of cases holding that the presumption should be to decline the exercise of jurisdiction.

17

law claims, in federal court, and the federal court declines to exercise supplemental jurisdiction over the state claims, the plaintiff may refile those claims in state court.'" *Ledford*, 2012 WL 1079552, at * 3 (quoting *Brooks*, 614 F.3d at 1230); *see also* 28 U.S.C. § 1367(d) (providing that the state's applicable statute of limitations "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period").

## CONCLUSION

When relying on the record and not Plaintiff's unsubstantiated allegations in the Amended Complaint, the Court finds no genuine issue of material fact as to the lack of deliberate indifference by Defendants Nero, Beall, Rivera, and Ziegler. Accordingly, Defendants' Motion [filed December 10, 2021; ECF 79] is **granted in part** as to Claim 5, and summary judgment is entered in favor of those Defendants on that claim. Because that resolves the only federal claim remaining in this case, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law medical negligence claim against Defendants Vecchiarelli, Caldwell, Nero, and Beall. Therefore, Claim 4 is dismissed without prejudice. The Court directs the Clerk of the Court to close this case.

SO ORDERED.

Entered this 28th day of March, 2022, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge